McIlvaine, J.
I will state and consider the principal objections urged against this assessment, by the plaintiffs in error, in the following order :
1. The apportionment of the assessment according to benefits, and not in proportion to the foot front or according to the valuation for taxation, was unauthorized.
2. The assessment was levied upon lots belonging to the plaintiffs, which wei’e not subject to the charge.
3. Before the apportionment was made, the specific lots to be charged should have been designated by the council.
1. Whether these objections be well taken or not, depends upon the proper construction of the proviso in section 539 ■of the municipal code, as amended March 29,1872 (69 Ohio L. 59), which was in force at the time the proceedings •complained of were being conducted.
And before quoting the proviso, it would be well to re *390 mark that its terms must be construed, not only in connection with those of other sections to which reference is therein made, but also in the light of the whole scheme of special assessments as inaugurated by the code.
The proviso is as follows : “ That where the council of any municipal corporation shall appropriate any lots or lands for the purpose of laying offj opening, extending, straightening, or widening any street, alley, or public highway, it shall have power to assess the costs and expense of such appropriation and improvement upon the lots or lands benefited thereby, including lots and lands that are contiguous and adjacent, as well as those that abut upon said street, alley, or highway, or upon the general duplicate of all the real and personal property subject to taxation within the limits of the corporation, as provided in section 583 as herein amended; that when said council shall determine to make such assessment upon the lots and lands benefited by said improvement, they shall levy said assessment upon all the lots and lands benefited, either in proportion to the-foot front of said lots and lands, or according to their valuation for taxes on the general duplicate.”
So much of section 583, as relates to special assessments, reads as follows: “ The assessments made for the purpose-of paying the costs and expense of opening, widening, or straightening such street, alley, or highway, shall be made and approved in accordance with the provisions of section 543 of the act of which this is amendatory, as amended May 2, 1871, and of sections 584, 585, 586, 587, 588, and 589 of the act to which this is amendatory; and maybe made payable in one or more installments, as provided in-section 577 of said act.” [The omission here of the word “ extending” is of no importance, as the operation of the sections named is applied to cases of “ extension ” by the terms of the proviso in section 539, above quoted.]
The apportionment in this ease was made in accordance with the provisions of section 584; but it is contended by plaintiffs in error that this section can not - apply to assessments for the payment of the cost of land appropriated for *391 streets, because section 539, as amended, gives the only-power to assess in such cases; and it expressly declares that such assessments shall be made in proportion to the foot front or in accordance with the valuation on the general duplicate.
Let us examine the scope and operation of-this section (584), before section 539 was so amended- as to authorize special assessments for the cost of lands appropriated.
The section reads as follows: “ Section 584. In all cases in which it is determined to assess the whole or any part of the cost- of any improvement upon lots or lands bounding or abutting upon the same, or upon other lots or lands benefited thereby, the council may require the board of improvements, or may appoint three disinterested freeholders of the corporation or vicinity, to report to the council an estimated assessment of such cost on the lots or lands to be charged therewith, in proportion, as nearly as may be, to the benefits which may result from the improvement to the several lots or parcels of land so assessed,” etc. This report, subject to a review by an equalizing board, is, by section 588, when confirmed by the council, made complete and fiual.
When the code first went into force, section 584 was apart; and sections 576 and 579 contained the grant of power to make special assessments. The power contained in section 576 was limited to bounding or abutting lots or lands, while the power in section 579, though limited to an equitable proportion of the cost of an improvement, authorized the assessment to be made upon other lots or lands within the corporation, not bounding or abutting, if, in the opinion of the council, specially accommodated and benefited by the improvement. Under section 576, however, bounding or abutting property could, by the terms of the section, be assessed only in proportion to the foot front or according to the valuation, and the manner of apportionment, either by the foot front or the valuation, was required to be determined by ordinance.
Now it is beyond dispute, we think, that for the cost of improving streets the equitable rule of assessment according *392 to benefits, under section 584, was intended to and does apply in all cases of assessment upon abutting property, as well as upon property benefited though not abutting, notwithstanding a levy per foot front on the valuation-is required by section 576 to be declared by ordinance before the work is done. So that we find in section 584 a grant of power to assess according to benefits—a third mode of apportionment—which might ultimately be resorted to in any .and all cases of special assessment under the system devised by the code when it was first adopted.
It is true that we find in the provisions of section- 576 a strong indication or expression of legislative opinion, that as between the owners of abutting property, as a general rule, an equitable distribution of the b'urden would be se-. •cured in an apportionment by the foot front or according to the valuation ; and hence one or the other of'these modes •should, in all cases, be adopted by the council, in the first instance, in declaring their purpose to pay for the improvement by special assessment; but in no case, is the assessment declared by the statute ‘‘complete and final,” until the power prescribed in section 584 is exercised. Not that ■snch power must, in all cases or in any case, be exercised before the assessment is complete and final, but that it may ■be invoked in any and all cases. The language of the section is : “ In all cases in which it is determined to assess the whole or any part of the cost of any improvement upon the lots or lands bounding or abutting,” etc., the assessment ■may be made as nearly as maybe in proportion to the benefits, notwithstanding the only power conferred by section ■576 is to assess in proportion to the frontage of the lots or lands, or according to their valuation. Such being the force and scope of section 584 in respect to the improvement of streets under chapter 49 of the code, no reasonable doubt can exist that it has like force and operation in eases •of assessments for the cost and expense of lands appropriated for streets under sections 539 and 583, as amended in 1872; for though the power prescribed in the last clause of the proviso in section 539 is limited in terms to an assessment, *393 ■either in proportion to the froutsigeof Jots or in accordance with their valuation, the provision of section 583 is that the cost and expense of lands appropriated for streets shall be assessed upon the property to be charged therewith according to benefits, so that a resort ultimately to an apportionment according to benefits is as clearly within the power •of the council in the one as in the other case.
In other words the court is of opiniou that sections 581-■589, inclusive, have exactly the same operation’ and application, in respect to assessments authorized by section 539 .as amended, as they originally had to assessments made under sections 576 and 579.
And further, in my opinion, the true construction of the last clause in section 539 limits its application to eases where the council determines to fix, by its own action, the ■final apportionment of the assessment; consequently, in all -cases where it is hot so determined, the assessment must be made according to benefits, as provided in section 583. Without this last clause there would have been (as there was after its repeal in 1873) no power to assess such bur■dens in proportion to frontage or valuation.
In arrriving at this conclusion, which we think is done by fair reasoning, we find the scheme developed in the code to be in fact what all systems of special assessments must be in theory—namely, an imposition of public burdens arising from local improvements upon the property specially benefited by the improvements in proportion to the benefits resulting to the property. Whenever an inequality may exist in practice under this system, we think the fault is found, not in the scheme itself, but in the manner in which it is applied in the particular case. .
If we have discovered the true meaning of the legislature, there is no insuperable difficulty in harmonizing the views expressed with the language contained in the last clause of the proviso, as amended in 1872, but which was omitted in the amendment of the following year.
But if the terms of the different clauses in the proviso be irreconcilable when considered independently of other pro *394 visions of tbe code, we have endeavored to show that they are not so when reviewed in the lii>ht of the scheme of special assessment developed in the code.
It is true that by the former clause all special assessments-for lands appropriated should be apportioned according to-the rule prescribed in section 583 as amended, to wit, according to benefits. And by the last clause all such assessments-should be apportioned according to frontage or valuation.. But we must assume that the legislature, by enacting the last clause, did not intend to repeal or nullify the former;yet such would clearly be the result if the last clause provides the only modes in which-an apportionment of the assessment can be laid.
Such a conclusion should be avoided, if possible, and we-think the views above expressed fairly and reasonably give to each clause an important operation in the scheme, which results ultimately in bringing the assessment within the principle which should control all special assessments—to wit, an apportionment of burdens according to the benefits.
Another argument on this point deserves to be noticed. It is assumed, and no doubt correctly, that bonds may be issued for the cost and expense of lands appropriated for streets, etc., and special assessments may be made for the payment of the bonds. Hence it is argued that such assessments must be levied in proportion to the foot front, or the valuation. This argument is based on section 653 of the code, which provides: “In case any special assessment is made, as authorized in chapter forty-nine, and bonds, notes,, or certificates of indebtedness of the corporation are issued in anticipation of the collection thereof, the ordinance directing the assessment shall specify the amount per foot front or the amount per valuation to be paid, and where the-assessment is payable in installments, the amount to be paid annually. And it shall be the duty of the auditor or clerk of the corporation, on or before the second Monday in September annually, to certify such assessment to the council, to be by them confirmed, ” etc.
The shortest, and, I think, a good answer to this argument,. *395 might be found in the fact that assessments to pay for lands appropriated for streets, etc., are authorized in chapter 48- and notin chapter 49 of the code, and therefore this section does not apply in this case. But, again, I think that there is a case omitted in this section, which might probably be supplied by construction. But, however that may be, there can be no doubt that the power to assess, according to benefits, for the cost of land appropriated for streets, etc., is no-more inhibited by the implications of this section than was the power to assess for street improvements according to-benefits under sections 579 and 584, either before or since the amendment of section 539 in 1872. And I apprehend that no one will contend that these sections (579 and 584) have not been in full force and operation ever since the code was adopted, notwithstanding assessments under them were not by the foot front or the valuation, and notwithstanding?, further, that bonds might ever have been issued in anticipation of revenue to be collected on -such assessments.
2. The assessment was levied upon lots abutting on the original, as well as upon the extension of Division street; and also upon other lots in the vicinity of Division street, though separated therefrom by other lots and fronting on streets intersecting Division street. Hence, it is claimed that lots belonging to the plaintiffs severally, which, by reason of their remoteness, were not liable to be charged, were included in the assessment.
The property liable to be assessed for such improvement^ is thus described iu the statute (sec. 539): “Lots and lands benefited thereby, including lots and lands that are contiguous and adjacent to, as well as those that abut on the street,” etc. Conceding that the “ street ” here referred to, is the part extended, not including the original, the question is, what is meant by “contiguous and adjacent” lots or lauds? That they are other than abutting lots, and lands is perfectly clear from the context.
The meaning of these words, especially “adjacent,” can not be limited by any absolute or fixed measurement, but, in each ease, must be determined by the circumstances; yet,. *396 for all practical purposes they may be said to embrace lots .and lands “ near to” the improvement; and all such, when ■specially benefited, are liable to be charged w’ith the costs and expense.
In the case before us, we do not find anything in the circumstances that tends to show that the assessment was levied upon lots too remote' from the improvement. The ■exact distances of the lots assessed from the extension, are not given in the record; but from a map of the street and vicinity, accompanying the record, and showing the relative positions of the several lots, it is manifest that they’ are .all embraced within a comparatively small fraction of the territory of the city.
3. Should the lots and lands chargeable with the assessment have been specifically designated, before the apportionment was submitted to the assessors, under section ■584?
It is made the duty’ of the assessors, acting under this section, to report an estimated assessment of the cost of the improvement upon the lots and lands to be charged therewith ; and it is true that previous to the amendment of section 539, in 1872, the lots and lands subject to be charged by assessments, were designated under section 576 as “bounding or abutting on the proposed improvement,” or, under ■section 579, were to be ascertaiuéd by’ special selection by. the city council or board of improvements.
But- when the power to assess the cost of land appropriated for streets, etc., was first giveu by section 539, as .amended in 1872, the property to be charged was described ■■as “ lots and lands benefited thereby ; ” and thereupon, without designating who should ascertain the specific property’, the statute proceeds to declare that the power shall be executed as provided in section 583, namely’, in sections 584-589. Therefore, inasmuch as sections 576 and 579 are not referred to, it is fair to infer, in this class of assessments, that the intention was to authorize the assessors to act upon the general description of the property to be charged.. 'This construction, however, does not’place the selection of *397 the specific property under the arbitrary control of the assessors, as their report is of no effect until adopted by the-council. So that the statute secures the judgment of the assessors, and álso of the council, in ascertaining the specific property included under the general description of “ lots and lands benefited.”
That wTe can not derive any aid, in considering this point,. from section 579, is not solely from the fact that it is not named in this scheme, but also from the difference between its terms and those of section 539. In the latter section,. the property to be charged is described, in general terms it is true; but in section 579, the language is, “such other lots or lands within the corporation, not bounding or-abutting upon the improvement, as will, in the opinion of the council or board, be specially accommodated, and benefited.” Thus excluding the assessors appointed under section 584, in terms, from any participation in the identification of the property benefited and subject to assessment under section 579.
In the case before us, the council did not undertake to designate the particular lots, or to levy the assessment, but the whole matter was confided to the judgment, in the first instance, of a board of disinterested freeholders of the corporation; which action, in our judgment, was within Empower and discretion conferred by the statute. *

Judgment affirmed,.